STATE of Maine,

v.

Martin J. COMER.

Supreme Judicial Court of Maine.

Argued May 13, 1994.
Decided June 29, 1994.

R. Christopher Almy, Dist. Atty., Jeffrey Silverstein (orally), Asst. Dist. Atty., Bangor, for state.

John Bunker (orally), Paine, Lynch & Harris, P.A., Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

Defendant Martin Comer appeals from a judgment entered in the Superior Court (Penobscot County, *Kravchuk, J.*) following a jury verdict finding him guilty of five counts of gross sexual misconduct and five counts of unlawful sexual contact. 17-A M.R.S.A. §§ 253, 255 (Supp.1993). Defendant contends that the State was guilty of misconduct during closing argument. We hold that the prosecutor's remarks concerning witness credibility do not constitute obvious error, and we affirm the judgment.

The evidence presented at trial may be summarized as follows: In 1986 defendant began dating the victim's mother and became a father-figure to the then seven-year-old victim. Thereafter the victim and his mother moved to New Hampshire to live with defendant. When he was eight, the victim told police officers that defendant had sexually abused him, but later recanted the allegations. The victim and his mother moved to Texas and then returned to Maine in 1988 to again live with defendant.

In 1989, the victim appeared at two civil hearings in New Hampshire and testified under oath that defendant had not abused him. In May of 1990, after receiving counselling and viewing a film describing sexual abuse that encouraged children to report it, the victim immediately reported that he had been sexually abused by defendant. He testified at trial that, during 1988 and 1989, defendant had performed oral and anal sex on him and had masturbated him on numerous occasions. He explained that he earlier had denied the abuse because, until he viewed the film, he did not understand that the sexual acts were wrong. He testified that the defendant, whom he considered a father-figure, had told him that everyone did those acts.

Defendant did not testify at trial. During final argument, the State commented on the veracity of the victim,[1] and defense counsel

---

1. During its closing argument, the State argued that:

   Now, ladies and gentlemen, in the course of this case, some awful things had happened, we suggest that you can find from the evidence, but there's also a very sinister aspect to this case we suggest the evidence shows. We

talked to you about how Mr. Comer, we suggest the evidence entitles you to conclude, was not only a smart man but a manipulative one, a devious person.

.    .    .    .    .

[W]hen you get into that jury room you can say, look, we know [the victim] told us the

did not object. The jury convicted defendant on all counts, and he appeals.

Defendant argues that the State's closing argument was improper because the prosecutor commented on witness credibility. Because he failed to object at trial, we review for obvious error. Obvious error is error so highly prejudicial that it taints the proceedings and virtually deprives defendant of a fair trial. *State v. True*, 438 A.2d 460, 468 (Me.1981). Our rules clearly provide that "a lawyer shall not [a]ssert a personal opinion . . . as to the credibility of a witness . . .; but a lawyer may argue, on the lawyer's analysis of the evidence, for any position or conclusion with respect to matters stated therein[.]" M.Bar.R. 3.7(e)(2)(v). This proscription applies with particular force to the statements of a prosecutor. A prosecutor is more than an advocate; a prosecutor stands before the jury, cloaked with the authority of the State, and is duty-bound to see that justice is done. *State v. Smith*, 456 A.2d 16, 18 (Me.1983). Although unable to assert personal opinion, a prosecutor may attack credibility by analyzing the evidence and highlighting absurdities or discrepancies in a witness's testimony. *Id.* at 17.

We have found prosecutors' statements of personal opinion particularly troubling when the comments concern a defendant's credibility and the case is a close one. *See, e.g., id.* at 19; *State v. Tripp*, 634 A.2d 1318, 1320 (Me.1994). In *Smith*, the prosecutor, during closing argument, repeatedly asserted his personal opinion that the defendant had lied while testifying. *Smith*, 456 A.2d at 17. The prosecutor commented that "[the defendant] gets caught lying and he can't even admit it" and "[y]ou people [the jury] are smarter than that, to let him [defendant] come in here and tell you he was telling the truth because he wasn't." *Id.* In response to defendant's objection, the court found that the remarks were appropriate and refused to give a curative instruction. We found reversible error because we were unable to conclude that it was highly probable that the jury's verdict was unaffected by the improper comments. *Id.* at 19.

*Tripp*, the only case thus far to involve obvious error, also presented a close case that turned on whether the jury believed the victim or the defendant. The victim testified to instances of sexual abuse by his father, the defendant. Defendant, in turn, testified that the victim's testimony was not true. During cross-examination, the State repeatedly and pointedly asked defendant whether the victim had lied. *Tripp*, 634 A.2d at 1319. Although defense counsel failed to object, we found the questions constituted obvious error because they elicited improper lay opinion concerning witness credibility. *Id.* at 1319–1320. The error in that case was compounded by the State's closing argument "that [the] nine-year old boy . . . *told you the truth*. He told you what happened to him.

truth, that's what we—that's what the State of Maine is suggesting to you, we're suggesting to you that Matthew told you the truth.

. . . .

Now, the defendant's going to place—and did in his opening statement—place a lot of evidence on this so-called testimony under oath. Well, you take it for what it really is. You take it for what it really means. And remember one thing, that the real testimony that counts in this case is what [the victim] said on Monday and Tuesday morning right here in this courtroom in front of you folks. And we suggest to you that's the truth. That's what happened, secretly, between him and this man over here. Thank you.

In rebuttal, the State argued that:

There's no reason now for [the victim] to come in here and lie. He came in here to tell you the truth. There is no motivation at all here for him to lie. He doesn't get anything by coming into a courtroom, talking about these things to you. We suggest you can conclude that.

. . . .

Folks, our mission in this courtroom is to seek the truth. We each have a role to play. [The victim's mother] had a role in her life to play as a mother. . . . [H]er role as a mother stopped when she walked in this courtroom. She had a role to play in this case, and that was to tell you the truth. Your role is to seek the truth. Her role was to tell you the truth. [The victim's] role was to tell the truth. We suggest your role is to seek the truth. And, we would suggest to you, ladies and gentlemen, that if Mr. Comer had been that great dad, that great father who had done all of these great things for [the victim] and had never done anything wrong, we would not be here today. Where is the truth? Why are we here? We are here because [the victim] is giving you what you are seeking, and that is the truth. Thank you.

He told you what his father did to him." *Id.* at 1321. "[I]t does all come down to [the victim] and Linwood Tripp, Sr., because one of them wasn't telling the truth. *One of them was lying here to all of us.*" *Id.* Through those comments, the State clearly implied its opinion that the victim told the truth and the defendant lied. We concluded that "[i]n a close case such as we have here, this constitutes serious obvious error and requires reversal." *Id.*

∎ In the present case, the State did not ask any improper questions concerning witness credibility, and defendant was not compelled to accuse the victim of being a liar. Furthermore, defendant did not testify, and the prosecutor's closing remarks did not assert that defendant had lied. Rather, the prosecutor began by suggesting, quite properly, that the jury could infer "from the evidence" that the victim's previous testimony in New Hampshire was the product of the defendant's coercion and was false. As the argument progressed, the phrase "from the evidence" was dropped, and the prosecutor came perilously close to replicating the offending argument in *Tripp.* We cannot say that this is not error, but reading the entire argument as a whole, it is reasonable to assume that the jury was not induced to focus on anything other than the evidence. In short, we do not find that the ill-chosen words in question deprived defendant of a fair trial.

Defendant's other contentions are without merit.

The entry is:

Judgment affirmed.

All concurring.