1997 ME 69

**STATE of Maine**

v.

**Dale GOODWIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 22, 1996.
Decided April 4, 1997.

David W. Crook, District Attorney, Evert Fowle, Asst. Dist. Atty., Skowhegan, for State.

Emily A. Broadhead, Laskoff & Associates, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] Dale Goodwin appeals from the judgment entered on February 3, 1995, following a jury trial in the Superior Court (Somerset County, *Marsano, J.*) convicting him of unlawful sexual contact (Class C), 17–A M.R.S.A. § 255 (Supp.1996). Goodwin

contends that prosecutorial misconduct during his cross-examination and a discovery violation deprived him of a fair trial. We affirm the judgment. Goodwin also appeals from the court's judgments entered the same day that revoked his probation on two 1993 convictions. Because Goodwin's brief addresses no issue relating to the probation revocations, we affirm those judgments.[1]

[¶ 2] In June 1994, Goodwin was 27 years old and the victim was a 13–year–old boy. The two had been friends for about two years. The offense occurred while the two were swimming in Sibley Pond in Canaan. The victim testified that while they played in the water, Goodwin, on two occasions, pulled off the victim's shorts and underwear and touched his buttocks and penis. The defense theory at the trial was that the victim had misinterpreted some incidental touching because the victim had heard rumors that Goodwin was homosexual. On direct examination Goodwin testified that some of the victim's clothing did come off while they were playing in the water. He stated that on the first occasion only the victim's shorts came off. He was not sure how that happened, but speculated he may have caught his hand on them when he was throwing the boy up and out of the water. He testified that on the second occasion both the victim's shorts and underwear were removed. Goodwin testified they were playing tag, and when Goodwin grabbed the victim's shorts the victim "wiggled right out of them" while swimming away. Goodwin also testified there was considerable physical contact between them while they were playing in the water and that Goodwin may have touched the boy's buttocks by accident while they were feeling around in the water for the lost shorts and underwear.

[¶ 3] On cross-examination the State questioned Goodwin about inconsistencies between his testimony and the testimony of the victim and the investigating officer, Sergeant Carl Gottardi. On seven occasions the State asked Goodwin whether the testimony given by the victim or Gottardi was incorrect. For example, the State asked, "Now, at this point, did [the victim] tell you to stop it or cut it out or make any statement to you?" Goodwin answered, "No." The State then asked, "So, is [the victim] incorrect on this point?" After Goodwin objected at a sidebar conference that the jury is responsible for assessing credibility, the State responded, "I'm being very careful not to use the [word lie]." The court ruled that the State could focus the jury's attention on whether there is a difference in testimony.

[¶ 4] Goodwin argued at the trial and again on his appeal that asking the defendant whether another witness was incorrect is the same as asking if the witness lied, citing *State v. Bourgeois,* 639 A.2d 634 (Me.1994); *State v. Tripp,* 634 A.2d 1318 (Me.1994); and *State v. Steen,* 623 A.2d 146 (Me.1993). The State contends that it was merely attempting to call attention to the differences in testimony and did nothing objectionable. We disagree with both contentions.

[¶ 5] The practice of asking a defendant whether a witness is lying is objectionable for two reasons. First, it creates the impression that the jury could believe the defendant only if the jury found another witness lied. That impression, whether conveyed in cross-examination or in final argument, is manifestly erroneous. *See Tripp,* 634 A.2d at 1320. Second, the question whether the defendant believes another witness lied is irrelevant. Evaluation of credibility is for the jury, and a lay witness's opinion on credibility is simply not admissible. "The jury are the judges of credibility which is not restricted to veracity but relates also to such possible factors as powers and opportunity for observation, recollection and accuracy of observation, etc." *Lewis v. Knowlton,* 1997 ME 12, ¶ 8, 688 A.2d 912 (quoting *Carver v. Lavigne,* 160 Me. 414, 421, 205 A.2d 159, 163 (1964)). In this case, the questions asked by the State are subject to objection only on the second ground. Goodwin's opinion whether the victim is mistaken or incorrect is not relevant and not admissible pursuant to M.R.Evid. 401.

---

1. Our decision affirms the judgments in Superior Court Docket Nos. CR–94–411, CR–93–5, and CR–93–341.

[¶ 6] We agree with the State that it may identify or highlight differences between the testimony of the defendant and the State's witnesses. For example, we accept the State's contention that it may ascertain specifically areas in which the defendant disagrees with other witnesses, if such questioning calls for a statement of fact rather than of opinion. Differences in testimony can be identified without asking the defendant's opinion whether the other witnesses were incorrect, mistaken, inaccurate, or suffered from poor memory. For example, to ask Goodwin, "Then you disagree with Officer Gottardi's statement that you admitted accidentally pulling off [the boy's] shorts and underwear?" is different than asking, "Then Officer Gottardi is incorrect?" and is a proper way to ask the question. Several other jurisdictions have recognized the distinction we make today. *See, e.g., Commonwealth v. Littleton,* 38 Mass.App. 951, 649 N.E.2d 162 (1995); *State v. Flanagan,* 111 N.M. 93, 801 P.2d 675 (App.1990), *cert. denied,* 111 N.M. 77, 801 P.2d 659 (1990); *State v. Wright,* 76 Wash.App. 811, 888 P.2d 1214 *review denied,* 127 Wash.2d 1010, 902 P.2d 163 (1995). In the circumstances of this case, however, permitting the State to ask these irrelevant questions about the defendant's opinion is harmless error. M.R.Evid. 103.

[¶ 7] Goodwin also contends that the court should have dismissed the indictment because of a discovery violation. Sergeant Gottardi testified that he had received a report from Deputy Richard Emery along with a written statement of the victim. On inquiry in the absence of the jury, Sergeant Gottardi explained that he was referring to a cover sheet attached to the victim's statement but he could not recall its contents. Based on the State's assurance that the form would be located and submitted to the court, the defendant's motion to dismiss was denied. Unfortunately the State neglected to submit the form during the approximately three weeks between the trial and the entry of the judgment. Some 16 months later we granted the State's motion to supplement the record and submit the missing cover sheet.

Nothing contained therein warrants vacating Goodwin's conviction.

The entry is:

Judgments affirmed.